UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN NEBLETT,<br><br>    Petitioner,<br><br>  v.<br><br>ROBERT L. AYERS, Warden,<br><br>    Respondent.<br>_____ / | No. C 08-3545 SI (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

**BACKGROUND**

In 1984, Petitioner pleaded guilty to a single charge of second degree murder, see Cal. Pen. Code § 187, and was sentenced to fifteen years to life in state prison. In 2007, the Board of Parole Hearings ("Board") found Petitioner unsuitable for parole for the sixth time on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet., Ex. A at 121.)

In reaching its decision, the Board accepted the following facts:

> [In July 1984, Petitioner] and a friend had driven to Fiesta Island at approximately ten a.m. and saw William Mohrman's motor home. Mohrman is a friend of [Petitioner] as they worked together in the Navy. [Petitioner] and his friend had picked up a quarter keg of beer and they took it over to the motor home. This was approximately ten a.m. Various people were in and out of the motor home.
>
> A little while later, Mohrman took out his gun to show some friends that were parked next to him, next to them. He left and a short time later returned, brought the gun back unloaded, and left it on the sofa of the motor home. He put the shells next to the gun. [Petitioner]'s friend, Davilla [ ] picked up the gun and put it in a rear cabinet as he was afraid someone might get hurt. He put the shells to the gun on the right side of the cabinet. Mohrman and [Petitioner] subsequently left to go get some ice for the beer. While they were gone, Davilla was outside throwing a football around with some friends when Gortarez [the victim] came up and joined them.
>
> Gotarez was in and out of the motor home on several occasions drinking beer and asking for cigarettes. [Petitioner] had given Gortarez another beer and cigarette and told him to leave. Gotarez did leave but returned in about 15 minutes for another cigarette and beer. [Petitioner] was the only one there. He told Gortarez that he was getting on his nerves and wanted him to leave. He said Gortarez was being obnoxious.
>
> Gortarez sat down on the step of the motor home and [Petitioner] went to the rear of the motor home and got the gun and held it at Gorterez's head, stating 'We told you to get the hell out of here. I'm not fucking with you.' Gortarez told him to take it easy. [Petitioner] then pointed the gun in an upward angle below the victim's ear and pulled the trigger. This resulted in the death of the victim. [Petitioner] told police that he was feeling very intimidated by Gortarez and that is why he went and got the gun. He said he didn't 'give a goddamn if it was loaded.' He knew Mohrman usually kept it loaded but [Petitioner] did not know whether it was loaded or not. After the shooting, [Petitioner] moved the body to the back of the motor home. He then began yelling for Bill, and told somebody to get the cops because he had killed a man.

(Pet., Ex. A at 14–17.) At the parole hearing, Petitioner explained that Gortarez had broken into the trailer while Petitioner was off purchasing beer. Petitioner said he felt responsible for removing Gortarez because he (Petitioner) knew him more closely than Mohrman. (Id. at 19.)

In reaching its decision, the Board discussed the circumstances of his commitment offense, noting that the crime was carried out in a manner that was "very cruel, very cold and callous" and "calculated." (Id. at 121.) "[T]he inmate basically chose to go retrieve the weapon that was inside the motor home. And basically walked up to . . . the victim, who was sitting down, and basically shot this unarmed victim at very, very close range." (Id.) The Board also

2

found that the motive for the crime — fear and anger — was "rather inexplicable in relation to this man losing his life just like he did." (Id. at 121–22.)

In addition to the circumstances of the commitment offense, the Board cited as a factor in its decision Petitioner's criminal history, which is composed of two crimes prior to the commitment offense, and his behavior while in prison. At sixteen, Petitioner was arrested for the possession of marijuana. (Id. at 26.) At eighteen, Petitioner was arrested for public drunkenness. (Id.) At nineteen, Petitioner was fined for possessing alcohol on a city beach. (Id. at 27–28.) While in prison, Petitioner committed six minor disciplinary infractions, the last one in 1996, and one serious infraction, for delaying mandatory lock-up, in 1988. (Id. at 49, 123–24.)

The Board also took into consideration Petitioner's positive accomplishments. His work performance was "commendable," his participation in various inmate programs (e.g., Alcoholics Anonymous, substance abuse and alternatives to violence classes) was successful, and his prison academic record includes an AA in general education, as well as plans to finish his BA. (Id. at 42–43, 44–45.) Petitioner had also improved his, and acquired further, electronic technician skills. (Id. at 46–47.) His 2007 psychological report stated that Petitioner "would rate in the low range of his likelihood to commit future violent acts when compared to other similar inmates." (Id., Ex. B at 7.)

The Board observed that Petitioner's parole plans were not well-formed, despite Petitioner's investigations into parolee-friendly housing institutions designed to assist former inmates transition to life outside of prison. (Id. at 66–76.) Petitioner also lacked a firm job offer, and guaranteed housing. (Id. at 79, 124.) After a full hearing, during which all of the above evidence was considered, the Board found petitioner unsuitable for parole. (Id. at 121.)

In response to the Board's decision, Petitioner sought, and was later denied, state habeas relief. In 2007, Petitioner filed the instant federal habeas petition, alleging that the Board's decision violated his right to due process because it was not supported by some reliable evidence and was arbitrary and capricious.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

//
//
//
//

4

## DISCUSSION

Petitioner claims that the Board's decision was unsupported by sufficient evidence, and was arbitrary and capricious. (Pet., P. & A. at 1.)

In California, prisoners have a federally protected liberty interest in parole. See Sass v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1127–28 (9th Cir. 2006) (citing McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002)). According to "clearly established" federal law, a parole board's decision to deny an inmate parole complies with due process where there is "some evidence" to support the Board's decision. See Superintendent v. Hill, 472 U.S. 445, 454–55(1985); Sass, 461 F.3d at 1128. Under the "some evidence" standard, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [ ] board." Hill, 472 U.S. at 455–56. In addition, the evidence underlying the parole board's decision must have "some indicia of reliability." See McQuillion, 306 F.3d at 904. Accordingly, if a parole board's determination with respect to parole suitability is to satisfy due process, such a determination must be supported by "some evidence" having "some indicia of reliability." Id.

In assessing whether there is "some evidence" to support a board's denial of parole, this Court must examine the record, and consider the regulations that guide the parole board in making its parole suitability determination. Pursuant to such regulations, "[t]he panel shall first determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a); see In re Lawrence, 44 Cal. 4th 1181 (2008). The Board is to consider the circumstances relevant to the question of parole suitability as enumerated by the regulations, see id. § 2402(c)–(d),[1] and "all relevant, reliable information available." Id.

---

[1] The circumstances tending to show unsuitability for parole include: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison

§ 2402(b).

Here, the record shows that the Board had some reliable evidence to support its finding of unsuitability. The circumstances surrounding the commitment offenses, which suggested an offense that was carried out in a dispassionate and calculated manner, appropriately were particularly relevant to the Board's decision. Specifically, Petitioner, in a sudden drunken fit of anger, retrieved a gun, walked up to the unarmed victim, and shot him to death. While the circumstances of the commitment offense can, over time, cease to have probative value and a parole board's continued reliance on those circumstances as the basis for denying parole can raise due process concerns, see Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003), in the instant case, the circumstances of the crime — an impulsive, highly violent act from an otherwise nonviolent person — constitute some evidence of Petitioner's dangerousness. Additionally, because the Board's decision was supported by some evidence in the record, and was based on an individualized assessment of the particular circumstances of Petitioner's case, Petitioner's claim that the Board's decision was arbitrary and capricious is without merit.

However, the circumstances of Petitioner's commitment offense may soon cease to have significant probative value in answering the question of Petitioner's dangerousness. Various factors, including Petitioner's age and evidence of rehabilitation, greatly undermine confidence in a continued reliance solely on the unchanging circumstances of the commitment offense to deny parole. Petitioner was twenty-one years old when he murdered Gotarez, forty-four at the time of the 2007 parole hearing, which was his sixth such hearing, and he is now roughly forty-seven years old. As of 2010, Petitioner has been incarcerated for roughly twenty-five years, ten years beyond his minimum sentence of fifteen years. Petitioner has been disciplinary-free for

---

misconduct. 15 Cal. Code Regs. § 2402(c). Factors to be considered in determining whether the offense was committed "in an especially heinous, atrocious or cruel manner" include: (A) multiple victims were attacked, injured or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Id., § 2402(c)(1)(A)–(E).

6

fourteen years, his prior criminal history contains no violent offenses, his participation in self-help programs has been thorough and successful, his potential for violence has been rated as quite low, and he has marketable job skills.[2] Taking all these factors into consideration, the Court concludes that continued reliance solely on the unchanging factors of Petitioner's commitment offense may in the future violate Petitioner's federally-protected liberty interest in parole. See Biggs, 334 F.3d at 916.

The petition, however, will be denied. Despite strong evidence of rehabilitation and a greatly reduced likelihood of dangerousness, the Court, under the highly deferential AEDPA standard, cannot say that the Board's 2007 decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that such decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Petitioner's claim is DENIED.

**CONCLUSION**

The petition is DENIED.

The Clerk shall enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

DATED: March 15, 2010

SUSAN ILLSTON
United States District Judge

---

[2] The Court notes that signs of remorse, age being such that it reduces the possibility of recidivism, plans for the future including development of marketable skills, and institutional activities that indicate an ability to function within the law are, under the parole regulations, circumstances tending to show parole suitability. See 15 Cal. Code of Regs. § 2402(d)(3), (7), (8) & (9).

7